The first case on our calendar for argument this morning is number 19-963, Walker v. Fitzpatrick. Counsel? Good morning. William Frumkin for Ms. Walker. Very good. You may proceed. Thank you. Good morning, your honors, and may it please the court. Looking to the totality of the circumstances, this record leaves no doubt that Mr. Fitzpatrick was not just out to ruin Ms. Walker's professional career, but he was actually out to ruin her life. Essentially, he gambled on prosecuting her, and when he lost, that didn't stop him. He really had no problem proceeding to use his influence as a district attorney for many after Ms. Walker was acquitted. He just stepped up his efforts to do this after the acquittal. What took place, in essence, was that the paradigm that was set up to have Ms. Walker only interpret in civil matters in Onondaga County and criminal matters and civil matters in the other 61 counties of the state of New York, obviously reflect the fact that she was capable and she was able to do her job. This was a tailor-made ruse that Mr. Fitzpatrick... Why do you think he would do this? He had probable cause to indict her. She went to trial and was convicted. What are you suggesting was his motive for indicting your client? Well, Your Honor, the grand jury indicted her, but what do you think was his... the motive that you're insinuating existed? Your Honor, that's an excellent question. That would call for speculation on our part, but what I can tell you in terms of what actually happened was that he relied on the testimony of a witness who he was actually indicted and engaged in various collusion of crimes with criminals having to do with drugs. After he was unsuccessful in relying on his testimony as part of a plea deal to indict my client and use that testimony at trial, pursuant to which she was exonerated, basically, from that point, I'm sorry to say he was distinguished, but he was essentially a distinguished sore loser, along with Ms. McGonigal, who tried the case and lost, and that led them to proceed on into what I would call an unlawful attempt to stigmatize her and to prevent her from working. Mr. Frumkin, let me interrupt. This is Judge Carney. Yes, Your Honor. Whatever the motivation, and of course, one does think that the level of proof that needs to be attained in a criminal proceeding is different from what one would have in a civil proceeding that might warrant adjusting work assignments, for example, but I'm having a little difficulty understanding how, at the end of the day, your client has suffered a property deprivation of constitutional dimension, where she's just limited in one county to work on civil cases and otherwise can work throughout the state of New York and the rest of the Fifth Judicial District on all kinds of cases. Why is that a constitutional-level deprivation? Well, Your Honor, before I address that, and I certainly will, the judge, Judge Kahn, essentially found that, in two opinions, that the delay in her being able to be reinstated, she couldn't work at all and make a penny, which was actually a 10-month period. Your session mode is ending now. You will be returned to the main conference. This conference is being recorded. I'm sorry, we're having some difficulty here. I'm sorry. Please go ahead. Yes, what I'm saying, Your Honor, she was not able to work for 10 months after she was acquitted, up until the time that she was finally put back on the registry, and in that 10-month period, the record is replete with examples of Mr. Fitzpatrick and Ms. McGonigal's attempts with the Fifth Judicial District to essentially put in place this paradigm that you just referred to, and that delayed the process, and the district court, for some reason, in granting the motion for summary judgment, did not analyze the delay at all. The court had found that the delay was unconstitutional. Yes, Your Honor. You still need to show a constitutional-level deprivation. And we do, Your Honor. Sorry. If they had, for example, even notwithstanding her acquittal, there had been enough for the grand jury to indict her. That level of proof might have been enough to warrant the Inspector General's assessment of the evidence, and to determine whether it was appropriate for her to work. And also, there was this appearance of impropriety or bias that might be perpetuated and might taint future criminal trials where she would continue to work on criminal matters in Onondaga County. So, again, what is the constitutional-level deprivation? The constitutional-level is her inability to use her certification, professional certification, pursuant to the liberty interest, for a period of time after she was already acquitted, not only acquitted, but also reinstated. She did not work at all, you know, from the point that she was reinstated in April of 2014 for another six months, which is half of her salary of about $95,000, I should say salary income of the previous year. She essentially was put out to pass her permanently during that time. But she's an independent contractor, right, who's qualified to work. But what gives her an entitlement to work? But, Your Honor, that's what I'm trying to say. Her certification gives her the entitlement to work, and she was unable to work as a result of the delay. The Court's focus in the Summary Judgment Motion... I'm sorry to keep interrupting, but what if the caseload dropped off significantly in Onondaga County, as it probably has at the moment, and, you know, there are a lot of translators or interpreters, and, you know, other people are selected. She doesn't have the same kind of entitlement as an by virtue of her certification? Your Honor, she doesn't, but let's be practical about what actually happened here. What happened here was that she was exonerated, okay, and that gave her the right to be treated like every other interpreter in the state. Your Honor, if I just may answer your other question for one second. And what I'm saying to you, Your Honor, if you look back at her history, there was a lack of Spanish interpreters in those courts, you know, in the very courts that she worked in. So there was no reason to believe at that point that that occurred during that 10-month period after she was acquitted, okay. I'm sorry, even after the point that she was back on the list, until the time she actually got on the list, that she would not have worked in that period, and that would be provable by just looking at the income. Yes, Your Honor. You said that by virtue of the certification, she had the right to be treated just like any other certified translator or interpreter. Where does that proposition come from? Your Honor, that's an implication that, you know, is inherent. I think the court can take judicial notice of that. In other words... No, I can't, Mr. Frumkin. Okay, I will address that, Your Honor, if I may. She was exonerated... Mr. Frumkin, please let Mr. Kaplan speak. I'm sorry, Your Honor. I think part of it has to do with the phone. I apologize. Go ahead. Look, well, yes, I appreciate that the normal visual cues are not there, so I make allowance. But my concern here, in addition to what Judge Carney has raised, is the fact that simply because she was on the registry doesn't mean that she was entitled now to the same amount of work on an equal basis with everybody else. No, Your Honor. Excuse me, please don't interrupt. In fact, to any work whatsoever. Isn't that true? Your Honor, it is, but that is not the history of what had been occurring for every other over 21 years up until the point that Mr. Patrick, who admitted that her innocence or her acquittal had absolutely no effect on his right to go after her. Okay, there is a section of the CPL that prevents you from, you know, people who are exonerated from being stigmatized, and that didn't matter to him. He likened her case to OJ. The OJ case, a guilty verdict means nothing to him. He testified to this, as did Ms. McGonigal. Okay, we said that that should have no impact at all on her ability to work as an interpreter. And the human rights law also prevents that someone from being discriminated against. Now, in that period of time since she was put on the registry until she actually went back to work, okay, there are issues of fact as to, you know, when I say go back, you know, to work, I mean basically to resume her responsibility in any capacity. Okay, that loss of the use of her certification due at what we believe and should be tried to a jury, the machinations of these two individuals clearly is a deprivation of her liberty interest to use her certification. Nothing was guaranteed, Your Honor, but what I'm saying to you is if a jury looks back at her past history and the fact that she was held in high regard and all of the work that she did for 21 years and analyzed it compared to what would practicality would require in a situation like this in terms of what happened to her to not work at all, the fact of what happened after she actually went back and was able to work in the 61 other counties, et cetera, I'm not conceding that that doesn't impact and that's not a deprivation of her property interest, but just to argue this situation where she was not able to use her license at all, that is the reason that we were permitted to amend our complaint. Yes, Your Honor. Judge Kaplan, did you want to ask a follow-up question? No, thank you. Okay, then let me ask, Mr. Frumpkin, what if there had never been a prosecution, but the Inspector General had determined by a preponderance that your client had leaked information inappropriately that derived from the grand jury, would the District Attorney's Office and the court system have been entitled to strike your client from the list at that point? Your Honor, the OCIS would have made the determination to strike her, but that is not what happened, Your Honor. I'm asking, am I asking a hypothetical question? Yes, I understand, Your Honor. The reality of the situation, the only reason that the Inspector General did the investigation was because she was arrested, okay, and right after she was exonerated, their efforts slowed down to get her back to work, or at least to get back on the list. You have retained three minutes for rebuttal. We'll hear first from counsel from Robert Smith, who is for the DA's office, is that correct? No, Judge, Robert Smith is on behalf of James C. Tormey, the Fifth District Administrative Judge. Sorry about that, yes, okay, thank you. May it please the court, I represent the late Honorable James C. Tormey, who was the Fifth District Administrative Judge at the time of the facts involved in this case. This court should set forth in the decision in order of Judge Kahn from March 31 of 2016, and because Judge Tormey was entitled to both judicial immunity and qualified immunity. First, appellant's per diem interpreter assignments before an Onondaga County criminal court did not constitute a validly protected property interest. I think the case of McCrave v. New York State Thruway Authority by this court at 687 Fed Appendix 22 from 2017 stands for that proposition. She had no right to future assignments. She was paid on a per job basis. Other circuits have agreed with that. I acknowledge in the lower court when arguments before the district court were had, that she did not have a legitimate property interest in her work assignment. That's at docket 38 at page 9. She's now changed that position on appeal and is attempting to argue, realizing the fundamental flaw and fatal nature that has to her argument, that if she does not have a property interest, she cannot have a due process violation and she cannot have a stigma plus case. In the papers before the court, they argued both the Izikwu case and the Mudge case. The Mudge case, after the original briefing this case and before the court on oral argument, was in fact reversed by the Second Circuit, and in a case that they had alleged previously was most parallel, the district court was specifically reversed and the court found that there was no property interest in that case sufficient for due process and stigma plus purposes with regards to a teaching certificate. And in that case, in the Mudge case, the Second Circuit specifically found that even in the circumstance of a teaching certificate, the United States Supreme Court and the Second Circuit have not held that to be a property interest sufficient for constitutional purposes at this point. And this case deals instead with a certification solely to be an interpreter on a per diem basis before the courts of the Fifth Judicial District. My client is not William Fitzpatrick and is not Melinda McGonigal, but is in fact the administrative judge who was required to deal with an Inspector General report. The Inspector General reported to him that there was a basis based upon her refusal to take part in an interview with her that she should be suspended. The judge suspended her. The minute that suspension was lifted by the Office of Court Administration, my client, Judge Tormey, specifically allowed her to appear on a per diem basis in other courts within the Fifth Judicial District, which is six counties, and in criminal courts in other districts, and in civil courts in Onondaga County. To try to take that right to be a certified interpreter and turn that into a constitutionally protected right, with all due respect, is well beyond anything that is supported by the case laws. Let me ask a question, please. So I think your adversary would say that with his client having been acquitted of the charges that have been brought, that her certification, showing that she was qualified for work, gave her an entitlement not to be treated like any or differently from any other interpreter on the list. Did your client have the right to the proceedings she had undergone? Yes, I think she did, Judge. To be direct, I don't think there was a property interest and a right for her to appear in Onondaga County criminal court. She is a per diem interpreter, and the judge had an obligation, as the judge for the Fifth Judicial District, to follow the recommendations of the Office of Court Administration. He also had the absolute immunity and actions taken on what he believed was the best administrative requirement for the Fifth Judicial District to restrict her from appearing in criminal court. Why did it take a year for her to regain her eligibility to work? Well, I think the record will reflect, Judge, that initially when she was acquitted, sometime after that, Mr. Testo from the Inspector General's Office of the Office of Court Administration, not my client, began an investigation of her and suspended her during that period of time. He then attempted to have an interview with her, and the record will reflect that that then continued his Inspector General's report. At the end, when he was ready to issue the report, there was finally an agreement on the part of the appellant to appear for that report, and he nevertheless made a recommendation that she be suspended. That was subsequently changed by Judge Kokoma from the Office of Court Administration, not my client, Judge Tormey, and she was allowed to work. So it was the administrative process involved in the inspection, the Inspector General, that caused that delay. Let me ask a technical question, if I may. So I was sorry to learn that Judge Tormey died in June of 2019, but I guess he was sued in part in his official capacity and has been replaced by Judge Murphy. Is that right? That's correct. And I understand that in the ordinary course, Judge Tormey's name would be replaced by Judge Murphy's. So this is really a suit in part against the judicial district. Is that correct? That's correct. However, we requested that Judge Tormey's name be changed from the pleadings because he was sued individually and in his official capacity as the district judge. Good. The appellant would not do that, and as a result, I appear on behalf of Judge, the late Judge Tormey in his individual capacity, and I appear on behalf of the Fifth Judicial District in the official capacity, which is now Justice James Murphy. Thank you for the clarification. I think your time has expired. We'll then turn to Ms. Clark on behalf of Mr. Klein. Yes. Good morning, Your Honors. Jennifer Clark on behalf of Michael Klein, the district executive of the Fifth Judicial District, and we also ask that this court affirm the district court's decision dismissing the complaint and declining plaintiff's attempt to bring Mr. Klein back into the case with the second amended complaint after the close of discovery. So I just want to start with delay because that seems to be where the argument has gone so far, and as counsel for Judge Tormey explained here, the delay is really chalked up to the ongoing IG internal investigation, which, just to clarify who's who here, was conducted by OCA, which is the New York State Office of Court Administration. My client is not affiliated with OCA, and OCA was not of this case. So they are a separate entity that was conducting an internal investigation, which plaintiff first declined to participate in and then eventually did participate in, and the delay between her acquittal and her reinstatement to the registry is explained by that process being conducted by an administrative agency that is not party to this proceeding here. Additionally, there were no allegations in either the original complaint or the proposed second complaint that my client, Mr. Klein, had any involvement whatsoever beyond some conclusory allegations of a conspiracy between all the defendants regarding her delay in reinstatement to the registry. And he, in fact, does not have any control over who is or is not on the registry. So to the extent that plaintiff's argument revolves around the delay of reinstatement to the registry being the deprivation of the constitutionally protected property interest, my client is simply not implicated in that. And with regards to the minor restriction put on her ability to interpret once she did return, that simply does not count as a functional revocation of her professional certification. Let me interrupt for a minute. I was just looking at the July 1 email that came from your client's email address advising that Ms. Walker could be used only in civil matters in the courts. Why isn't that enough to create a stigma on her? Why isn't that a limitation that any reasonable reader would think, well, you know, there's a a governmental action that might be sufficient to cause her employment difficulties and therefore support her claim? Well, you know, I would disagree first with the idea that that could be a governmental action that would reach the level of the constitutionally cognizable deprivation that would be required under stigma plus. That's simply an insufficient deprivation of anything to count for that. But even putting aside the plus element, that email simply evinces no stigma. The only thing it does is inform court personnel about the restriction. The restriction is in fact in place. That is true information. It contains no false statements, and it doesn't even contain innuendo, which seems, I guess, to be the line of argument that plaintiff is relying on, that somehow you could assume some kind of innuendo from there, but there isn't. And this court has said most recently in the Mudge case and, you know, prior to that as well, that innuendo is simply not enough to support a stigma plus claim. So that email doesn't reach the stigma level, and the deprivation that is discussed therein doesn't reach the plus level. Okay, thank you. I think your time has expired. Thank you very much. Thank you for your argument, and we'll hear from Mr. Frumpkin. Mr. Frumpkin, you have three minutes of rebuttal. Thank you, Your Honor. Just a few quick points. First of all, the property interest that we spoke of earlier, and even to this point in all the briefing we did in the case, is not in a work assignment. Okay, the property interest is in her certification, you know, to be an interpreter. So that is something that we never argued prior to this point, and we're not saying that she had a property interest in her assignments. Now, back to the issue of delay, what occurred was that she declined to have the interview on the advice of counsel, okay, not knowing, no one told her what the ramifications of not being interviewed were. So as a matter of fact, she really wasn't even told she was under investigation until that attempt was even made, and that was about three months after she had already been acquitted that to have her, you know, interviewed. So that was something that she was not informed about, and that's essentially what occurred. But what counsel have addressed is the fact is that even after she was put back, you know, on the registry, okay, I mean, in other words, after she was found to be eligible to be back and reinstated, you know, in or around, you know, April, that was when, of 2014, when the IG cleared her, it still took two months, you know, for her to even be reinstated, okay, onto the registry. And then, because of this situation of could she do criminal work in Onondaga County or not interpreting those matters, she, Judge told me to even write a letter to her, okay, until August, you know, to her attorney, telling her what the parameters of what her work would be, and she didn't work till September. So we're talking about, you know, an acquittal that occurred back almost two years before that, then we're talking about a six month period from when the IG cleared her all the way until the time that she could work, and no one in their testimony could account for that. I'm not sure that I understand your argument that she had a property interest in being permitted to return to work sooner than she was. What's the source of that? Okay, well, okay, well, first of all, what we're really talking about with respect to to her, we're really talking about under the stigma plus law, you know, or analysis, a liberty interest, okay, which, which is not the same thing as the property interest. Judge Kahn had already found she didn't have one because of this, you know, ability to work elsewhere. And the reason that the case continued to this point, and we were permitted to amend our complaint to add in delay as a major factor was because the court found that delay was an impact on her liberty interest because of the fact that she didn't work at all, zero, until she was reinstated onto the registry, she could not work at all. And after she was reinstated onto the registry, she still didn't work for another three months. And Sandra Bryan, who is the director of OCIS, that's the Court inordinate amount of delay. And also, she couldn't, she couldn't really explain it either. So no one in the know, neither Ms. Bryan, or Judge Tormey, no one could understand or Mr. Testo, who was from the IG's office, no one could understand why this delay took place. Now, the inference that could be drawn from that is that you don't have an actor here, Judge Patrick, who is a low level, you know, individual, this guy, and with all due respect to him, is a high level authority. And this was actually addressed somewhat in post and pre deprivation law, which is developed in the circuit in the de Blasio v. Novello case, and also discussed in random fashion, okay. And essentially, I'm talking about Mr. Fitzpatrick. I'm trying to discuss, I'm referring to Mr. Fitzpatrick, who is the district attorney. That's correct. Okay. And it should also not be lost on the court that Mr. Fitzpatrick was the law school roommate of Judge Tormey. And that's a 50 year relationship that continued, unfortunately, up to Judge Tormey's But am I correct that it's the Office of Court Interpreting Systems and the Office of Court Administration that runs the registry? They run the registry, Your Honor, but they do not investigate, okay, on their own. OCIS, the IG does their investigating. Ms. Bryan testified that once the IG clears, that's the end of the ballgame, okay. And in her view, once you're acquitted of a crime, you know, you should be reinstated promptly. There's really no reason for the lag and delay. So there's an issue of fact as to what role Mr. Fitzpatrick had, along with Yes, Your Honor. I don't understand why that makes any sense. It makes sense. Okay. Okay. My explanation is this, Your Honor. Mr. Fitzpatrick had a view of my client that is unlawful because she's supposed to not be stigmatized when she's exonerated. Syracuse or Onondaga County is not New York City. He had a relationship with the I take it then that it is your position that if someone is acquitted in what to all outward observers it is an instance of jury nullification where there is overwhelming evidence of guilt, far more than enough evidence to satisfy the IG by a preponderance of the evidence, nothing bad can happen to the interpreter's employment situation at all. It would just be unconstitutional. Is that right? Your Honor, that's this law in New York. That is the CPL law. If you are exonerated, your record is sealed. Copies are destroyed. That's the position of the law. And that's the position of the human rights law and the executive law, section 296, I mean, section 16. You're taking some considerable interpretive liberties with the authorities you're citing. Your Honor, I don't know of any exception to the fact that if someone for whatever reason is exonerated and is acquitted that there is some limitation on their ability to go forward with their life and not be discriminated on that basis. And as a matter of fact, the statute calls it a nullity and the cases interpreting the statute repeatedly referred to the word stigma, that the person should not be suffered, you know, suffering a stigma in any way. What is the precise statute you refer to? Okay, it's the CPL. It's the sealing statute. It's New York criminal procedure law 160.50. And then it's also referenced in New York executive law, section 296, paragraph 16. And it's also in the corrections law. That's section 752. And that's when someone has been convicted. In that particular case, they still should be able to work unless it's related to the job they're trying to get. For example, you're not going to drive a Brinks truck if you were convicted of armed robbery. So there are laws in place with respect to this. But I'm also appealing to the court not to reward Mr. Fitzpatrick for his activities in this regard, because specifically because of the fact that this is not, as I said, New York City, there are relationships between his office and the district and the office of the Fifth Judicial District. And this is found also to have occurred by Judge Kahn in his decisions, that there were communications between the DA's office, the Fifth Judicial District, between the DA's office and the IG's office. We're well over time here. Could you please just wrap up one last sentence? Yes, Your Honor. I just wanted to make one more point that the district attorney's office released the indictment after she was acquitted to the IG's office without a court order. And finally, there was a judge on the court that wanted to use my client and had a sort of a somewhat of a disagreement with Judge Tormey about that, because under 22 NYCRR 217.1, the trial court is the one who decides who the interpreter is, not the administrative judge. Thank you, Your Honor. Appreciate it. Thank you. We will reserve decision. Thank you both. Thank you. Thank you all three.